1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BOARD OF TRUSTEES OF THE NORTHERN CALIFORNIA PLASTERERS HEALTH AND WELFARE TRUST FUND, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>RICHARD WEST,<br><br>    Defendant. | Case No. 14-cv-01672-PJH   (JCS)<br><br>**REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 11 |

## I. INTRODUCTION

In this ERISA enforcement action, Plaintiffs[1] bring a Motion for Default Judgment (the "Motion," Dkt. 11) seeking entry of default judgment against Defendant Richard D. West, d/b/a Rick West Plastering (a sole proprietorship), following the Clerk's entry of default.  Plaintiffs ask the Court to award unpaid fringe benefits, interest, liquidated damages, attorneys' fees, and costs.

Plaintiffs' Motion was referred to the undersigned magistrate judge for a report and recommendation.  A hearing was held on Friday, September 19, 2014, at which the undersigned identified certain deficiencies in Plaintiffs' Motion and supporting documentation.  Plaintiffs submitted a supplemental brief and declarations on October 1, 2014, which resolved some but not all of the deficiencies noted at the hearing.  The undersigned issued an Order to Show Cause on October 20, 2014 regarding the calculation of damages, and Plaintiffs submitted their second supplemental brief and declarations on October 30, 2014.  Taking into account these latest

---

[1] Plaintiffs are: (1) Board of Trustees of the Northern California Plasterers Health and Welfare Trust Fund; (2) Board of Trustees of the Northern California Plastering Industry Pension Trust Fund; (3) Board of Trustees of the Plasterers Local Union No. 66 Supplemental Retirement Benefit Fund; (4) Board of Trustees of the Northern California Plasterers' Joint Apprenticeship and Training Fund; and (5) Board of Trustees of the Plastering Industry Labor-Management Cooperation Committee Trust Fund.

United States District Court
Northern District of California

submissions, the undersigned recommends that the Motion be GRANTED in part, as discussed below.

## II.   BACKGROUND

### A.   The Complaint

Plaintiffs (also referred to as the "Trusts") filed their Complaint against Defendant on April 10, 2014.  Each plaintiff is a "multi-employer employee benefit plan[] pursuant to ERISA," 29 U.S.C. §§ 1002(3), 1002(37), and 1132(d)(1).  Compl. (Dkt. 1) ¶ 1.  Each is also a "jointly trusted employee benefit plan pursuant to the LMRA, 29 U.S.C. § 186(c)(5)."  *Id.*  Defendant is a sole proprietor in the business of plastering and related work.  *Id.* ¶ 3.  Plaintiffs served a summons and the Complaint on Defendant on May 4, 2014.  *See* Summons Returned Executed (Dkt. 6); Bissen Decl. (Dkt. 7-1) ¶ 2.

According to Plaintiffs' Complaint, Defendant agreed to be bound by two collective bargaining agreements ("CBAs"): the "Plasterers Master Agreement," which relates to Local No. 66 of an international plasterers' union, and the "Labor Agreement," which relates to Local No. 300 of the same union.  Compl. ¶ 11, 12; *see also* Martinez Decl. (Dkt. 11-1) ¶¶ 2, 4; Martinez Supp'l Decl. (Dkt. 16–1) ¶¶ 2, 3.[2]  Plaintiffs alleged that each agreement requires employers to provide monthly reports of hours worked by each covered employee and to make fringe benefit contributions to the Trusts on or before the fifteenth day of the month following the month when the work was performed.  Compl. ¶ 14.  Plaintiffs further alleged that Defendant "failed to pay fringe benefit contributions due [for] September and October 2013," *id.* ¶ 15, that Defendant owed contributions for July and August 2012, *id.* ¶¶ 18−19, and that Defendant owed liquidated

---

[2] The Plasters Master Agreement is between the Wall and Ceiling Alliance (an organization of contractors) and Golden Gate Lodge of Plasterers' and Shophands' Local Union No. 66 O.P. & C.M.I.A.  Compl. ¶ 11 & Ex. A; Martinez Decl. ¶ 2 & Ex. A.  A previous version of this agreement was between Local 66 and the Lathing and Plastering Contractors of San Francisco and San Mateo Counties, a predecessor to the Wall and Ceiling Alliance.  *See* Chang Supp'l Decl. ¶ 2; Martinez Supp'l Decl. Ex. A.  The Labor Agreement is between the Wall and Ceiling Alliance and Operative Plasterers' & Cement Masons' Local Union No. 300 of the Operative Plasterers' & Cement Masons' International Association of the United States and Canada, AFL-CIO.  Compl. ¶ 12 & Ex. C; Martinez Decl. ¶ 4 & Ex. C.  A previous version was between Local 300 and the California Lathing & Plastering Contractors' Association, Sacramento Chapter, Inc., which appears to be another predecessor to the Wall and Ceiling Alliance.  *See* Martinez Supp'l Decl. Ex. B.

damages for untimely payment of benefits for April 2011, November 2011, January 2013, February 2013, July 2013, and August 2013, *id.* ¶ 22.  The Complaint requested "at least $127,025.56" in unpaid benefit contributions and $33,657.31 in liquidated damages, plus interest, attorneys' fees, and costs.  Compl. § VIII ¶¶ 1−5.

    **B.**    **Motion and Initial Evidence**

    Plaintiffs filed their present Motion on July 29, 2014.  In support, Plaintiffs filed a declaration by Linda Martinez, an employee of Plaintiffs' third-party administrator, which indicated that Defendant made a partial payment of $103,987.70 on April 21, 2014.  Martinez Decl. ¶ 9.  Martinez calculated that Defendant owed $75,264.89 to the Trusts, consisting of $23,042.16 in unpaid contributions for October 2013, $41,310.64 in liquidated damages, and $10,911.64 in interest for various months where payment was not timely.  *Id.* ¶ 17; Martinez Supp'l Decl. ¶ 23.

    Plaintiffs also sought $3,984 in attorneys' fees for 19 hours of work, as well as $466.95 for filing and process service costs, as laid out in a declaration by Plaintiffs' counsel Lois Chang.  *See generally* Chang Decl. (Dkt. 11-6); Chang Supp'l Decl. (Dkt. 16–5).  Plaintiffs therefore requested a total judgment of $79,715.84 after taking into account the partial payment.  Mot. at 4.

    As exhibits to the Martinez and Chang declarations, Plaintiffs' submitted the following documents:

    1.  The 2013 Plasterers Master Agreement, effective July 1, 2013 through June 30, 2017, Martinez Decl. Ex. A;

    2.  A Memorandum Agreement signed by Defendant in March 2006, binding Defendant to the then-existing Plasterers Master Agreement and "any future modifications, changes, amendments, supplements, extensions and/or renewals" thereof, Martinez Decl. Ex. B;

    3.  The 2013 Labor Agreement, effective July 1, 2013 through June 30, 2017, Martinez Decl. Ex. C;

    4.  A "Sacramento Memorandum Agreement" signed by Defendant in December 2010 binding Defendant to the then-existing Labor Agreement and "any future modifications, changes, amendments, supplements, extensions and/or renewals" thereof, Martinez Decl. Ex. D;

United States District Court
Northern District of California

5.  An itemized description of Plaintiffs' attorneys' time spent and fees billed related to this action, Chang Decl. Ex. A; and

6.  Payment confirmation of Plaintiffs' filing fee and an invoice for service of process, Chang Decl. Ex. B.

**C.    Hearing and Supplemental Evidence**

At the September 19 hearing, the undersigned identified a number of deficiencies in Plaintiffs' submission.  Plaintiffs failed to submit CBAs governing Defendant's alleged untimely payments before July of 2013, and failed to explain how the Memorandum Agreements that Defendant signed bound him to the subsequent agreements that Plaintiffs provided.  Plaintiffs did not explain which Plaintiff was entitled to recover payments owed to the Operative Plasters Local Union No. 66 Journeyman and Apprentice Training Fund, and did not provide the reports necessary to confirm the value of Defendant's alleged debts.  The undersigned also noted deficiencies related to Plaintiffs' request for attorneys' fees.  On October 1, 2014, Plaintiffs filed a Supplemental Brief (Dkt. 16), supplemental declarations by Martinez and Chang, and the following additional documents:

1.  The 2009 Plasterers Master Agreement, effective July 1, 2009 through June 30, 2013, Martinez Supp'l Decl. Ex. A;

2.  The 2009 Labor Agreement, effective July 1, 2009 through June 30, 2013, Martinez Supp'l Decl. Ex. B;

3.  Monthly transmittals of hours worked by Defendant's union employees, Martinez Supp'l Decl. Ex. C; and

4.  The Trust Agreement for the Northern California Plasterers' Joint Apprenticeship and Training Trust Fund, effective January 1, 2014, Chang Supp'l Decl. Ex. A.

**D.    Order to Show Cause and Further Supplemental Evidence**

Based on the supplemental evidence filed October 1, the undersigned determined that although Plaintiff's requested damages corresponded to the amounts listed in the monthly transmittals, those amounts were not supported by the CBAs.  The undersigned issued an Order to Show Cause (Dkt. 17) instructing Plaintiffs to either justify their requested damages or recalculate damages (including liquidated damages and interest) to accord to the CBAs.  Plaintiffs filed a

4

second supplemental brief (Dkt. 18) and supporting declarations on October 30, 2014.  Linda

Martinez's second supplemental declaration includes newly submitted documents showing annual

increases to the fringe benefit compensation rates beyond the amounts set forth in the CBAs.  *See*

Martinez 2d Supp'l Decl. Exs. A−D.  These rates are still lower than the rates listed in the

transmittals, however, and Plaintiffs have recalculated their damages accordingly.  Plaintiffs now

request $2,553.95 in unpaid principal, $34,576.84 in liquidated damages, $8,652.36 in unpaid

interest, $3,984 for attorneys' fees, and $466.95 for costs, for a total of $50,234.10.[3]  2d Supp'l Br.

(dkt. 18) at 6.

## III.     ANALYSIS

### E.     Adequacy of Service of Process

As a preliminary matter, where entry of default judgment is requested, the Court must

determine whether service of process was adequate.  *Bank of the West v. RMA Lumber Inc.*, No.

C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008).  Because Defendant is an

individual, he may be properly served by "delivering a copy of the summons and of the complaint

to the individual personally."  Fed. R. Civ. P. 4(e)(2)(A).

Earlier in this case, Plaintiffs filed a declaration from a process server stating that he

personally served Defendant with copies of the Summons, Complaint, and other documents

related to the case.  *See* Summons Returned Executed.  Plaintiffs also filed a declaration by

counsel in connection with Plaintiffs' earlier motion for entry of default stating that Defendant was

personally served with the Summons and Complaint.  Bissen Decl. ¶ 4.  Service on Defendant

was therefore proper.

### F.     Entry of Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendant has

failed to plead or otherwise defend or appear after valid service.  Under Federal Rule of Civil

Procedure 55(b)(2), the Court may enter a default judgment once the Clerk, under Rule 55(a), has

entered the party's default based upon a failure to plead or otherwise defend the action.  The Court

United States District Court
Northern District of California

---

[3] This total is $29,481.74 less than Plaintiffs originally requested in their Motion.

is free to consider a wide range of factors in deciding whether to enter a default judgment, including: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471−72 (9th Cir. 1986); *see also* Wright & Miller, Federal Practice and Procedure, Civil § 2685.

Here, where Defendant has failed to respond to Plaintiffs' Complaint and Summons, the principal concerns are whether Plaintiffs' have pled a valid claim and whether they are entitled to the amount of damages they seek.[4]  "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Power Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### 1.  Plaintiffs' Recovery is Authorized by Statute and the Provided Contracts

ERISA authorizes the type of recovery that Plaintiffs seek.  Employers are required by law to make contributions to multiemployer plans as provided by collective bargaining agreements. 29 U.S.C. § 1145.  If an employer fails to do so, a fiduciary of the plan may bring an action to recover:

> (A) the unpaid contributions,
>
> (B) interest on the unpaid contributions,
>
> (C) an amount equal to the greater of—
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)

---

[4] Several of the other factors are satisfied by reason of Defendant's failure to appear.  Plaintiff would be prejudiced by a decision not to grant default judgment because Plaintiff has no other remedy.  Defendant has made no showing of excusable neglect or of a dispute as to material facts. And although policy favors a decision on the merits, that is not possible where, as here, Defendant has not appeared and there is no indication that he intends to.

United States District Court
Northern District of California

United States District Court
Northern District of California

of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

*Id.* § 1132(g)(2).  Each category of relief that Plaintiffs seek is authorized by subparts (A) through (D) of the statute.

The CBAs that Plaintiffs provided with the Martinez Declaration are also generally consistent with the damages that Plaintiffs request.  The 2009 Plasterers Master Agreement requires employers to pay the following amounts to the Trusts for each hour (straight time or overtime) worked by an eligible employee: $12.65 to the Plastering Industry Welfare Trust Fund ("Welfare Trust"), an amount increasing over the term of the agreement from $3.80 to $6.23 to the Northern California Plastering Industry Pension Trust Fund ("Pension Trust"), $4.05 to the Operative Plasterers Local Union No. 66 Supplemental Retirement Benefit Fund ("Local 66 Retirement Trust"), $0.65 to the Operative Plasterers Local Union No. 66 Journeyman and Apprentice Training Trust Fund ("Local 66 Training Trust"), and $0.38 to the Plastering Industry Labor-Management Cooperation Committee Trust Fund ("Cooperation Trust"), for a total ranging from $21.53 to $23.96 per hour.  Martinez Supp'l Decl. Ex. A arts. XVII–XXI.  All fringe payments, except payments to the Welfare Trust, are reduced for apprentices.  *Id.* art. XV §§ 9–10. The benefit rates for both journeymen and apprentices were renegotiated annually, as reflected in rate schedules filed with Plaintiffs' Second Supplemental Brief.  *See* Chang 2d Supp'l Decl. ¶ 5; Martinez 2d Supp'l Decl. Exs. A–C.

The 2013 Plasterers Master Agreement requires payment to the same trusts at different amounts: $12.53 to Welfare Trust, $6.23 to the Pension Trust, $4.40 to the Local 66 Retirement Trust, $0.95 to the Local 66 Training Trust, and $0.40 to the Cooperation Trust, for a total of $24.51 per hour.  Martinez Decl. Ex. A arts. XVII–XXI.  As under the earlier agreement, payments for hours worked by apprentices are reduced in proportion to their wages, except payments to the Welfare Trust.  *Id.* art. XV §§ 9–10.

7

The 2013 Labor Agreement includes similar provisions, requiring the following payment for each hour of work by a covered employee: $12.03 to the Welfare Trust, $6.23 to the Pension Trust, $2.20 to the Local 66 Retirement Trust, $0.40 to the Cooperation Trust, and $0.95 to the Northern California Plasterers' Joint Apprenticeship and Training Fund ("Joint Training Trust"), for a total of $21.81.[5]  Martinez Decl. Ex. C art. 5 § 6.  This agreement, rather than reducing fringe benefits pro rata for apprentices, limits the categories of benefits that apprentices are entitled to. As relevant to Plaintiffs' Motion, an employer must pay only welfare benefits for hours worked by apprentices in their second six-month period (who receive 55% of journeyman pay), but must pay full fringe benefits for apprentices in their seventh six-month period (who receive 80% of journeyman pay).  *Id.* art. 7 §§ 4−5.  The 2009 Labor Agreement is somewhat more complicated, with rates varying based on the time when, and area where, the work was performed.  *See* Martinez Supp'l Decl. Ex. B art. 5 § 2.  Because Plaintiffs do not seek damages related to any obligations owed under the 2009 Labor Agreement, *see id.* Ex. C, its reimbursement rates are not relevant to the resolution of Plaintiffs' Motion.

Each of the trusts discussed above corresponds to one of the Plaintiffs, except for the Local 66 Training Trust.  That trust merged into the Joint Training Trust, a plaintiff in this case, effective January 1, 2014.  *See* Chang Supp'l Decl. ¶ 3 & Ex. A at 3.  Plaintiffs may therefore recover Defendant's obligations to each trust listed above.[6]

The CBAs also require that an employer must pay fringe benefits by the 15th day of the month following the month when the work occurred.  Martinez Decl. Ex. A art. XXV § 1; *id.* Ex. C art. 5 § 7(a); Martinez Supp'l Decl. Ex. A art. XXV § 1.  Interest on late payments is assessed at ten percent per year.  Martinez Decl. Ex. A art. XXV § 4; *id.* Ex. C art. 5 § 7(a); Martinez Supp'l

---

[5] Plaintiffs submitted a rate schedule that purportedly reflects renegotiated benefit rates for "July 1, 2013 thru [sic] June 30, 2014."  Martinez 2d Supp'l Decl. Ex. D; *see* Chang 2d Supp'l Decl. ¶ 5. Because the rates contained therein are identical to the rates provided by the 2013 Labor Agreement, it is immaterial which of these two documents the Court relies on in calculating damages.

[6] Each of the CBAs also requires certain other payments, including contributions to the Wall and Ceiling Alliance for industry promotion, vacation pay deducted from employees' net wages and paid to employees' individual vacation accounts, and union dues deducted from employees' net wages and paid to the respective local union.  *See* Martinez Decl. Ex. A art. XXII–XXIV; Ex. C art. 5 § 6.  Those obligations are not at issue in this case.  *See* 2d Supp'l Br. at 6.

United States District Court
Northern District of California

Decl. Ex. A art. XXV § 4.  If Plaintiffs must file a lawsuit to recover unpaid contributions, Plaintiffs may also recover liquidated damages equal to the greater of two hundred dollars or twenty percent of the amount due and unpaid.  Martinez Decl. Ex. A art. XXV § 4; *id.* Ex. C art. 5 § 7(a), (c); Martinez Supp'l Decl. art XXV § 4.  The Plasterers Master Agreement provides for recovery of reasonable attorneys' fees and costs, and while it is not clear whether the Labor Agreement calls for such recovery, as discussed above ERISA allows a plan suing for unpaid contributions to recover reasonable attorneys' fees and costs of the action.  *See* Martinez Decl. Ex. A art. XXV § 5; *id.* Ex. C art. 5 § 7; 29 U.S.C. § 1132(g)(2)(D).  There is no requirement in the statute that such recovery be specifically authorized by a CBA.  *See* 29 U.S.C. § 1132(g)(2)(D).

### 2.  Defendant is Bound by Each CBA

Plaintiffs have provided two agreements, the Memorandum Agreement and the Sacramento Memorandum Agreement, under which Defendant agreed to be bound by collective bargaining agreements.  *See* Martinez Decl. Exs. B, D.  Plaintiffs present these agreements as Defendant's assent "to be bound by the current and any subsequent  Labor Agreement(s) between the Wall and Ceiling Alliance and [two local unions affiliated with Plaintiffs]."  Mot. at 3.

Under the Memorandum Agreement, which Defendant signed in March 2006, Defendant agreed

> to comply with all of the terms . . . of the Plasterers Master Agreement between the Union and the Lathing and Plastering Contractors of San Francisco and San Mateo Counties ("Association"), effective July 1, 2002 through June 30, 2005, as extended, and by the Plasterers Master Agreement, effective July 1, 2005 through June 30, 2009.

Martinez Decl. Ex. B ¶ 1.  Defendant also agreed "to comply with all future modifications, changes, amendments, supplements, extensions, and/or renewals of or to the Plasterers Master Agreement which may be negotiated between the parties thereto."  *Id.* ¶ 2.  The Sacramento Memorandum Agreement, which Defendant signed in December 2010, uses the same language but with respect to "the Labor Agreement between the Union and the California Lathing & Plastering Contractors' Association, Sacramento Chapter, Inc. ('Association'), effective July 1, 2010 through June 30, 2013."  *Id.* Ex. D ¶ 1–2.

The language of the memorandum agreements does not explicitly state that Defendant agreed to be bound by subsequent CBAs, as opposed to merely alterations—various categories of which are listed in the memorandum agreements—to the then-existing CBAs. The undersigned is nevertheless satisfied that the memorandum agreements represent Defendant's intent to be bound by all future collective bargaining between the contractors' associations and the unions, because Defendant agreed to comply with both modifications to the terms of the agreements and extensions to their duration. Defendant's payment of benefits in accordance with the subsequent CBAs, albeit untimely, provides further evidence that he intended to be bound.

### 3. Plaintiffs Overstate Defendant's Obligations

Plaintiffs' Motion initially overstated Defendant's obligations by more than $30,000 as a result of including obligations that were not theirs to claim, such as payments owed to employees' vacation accounts and an industry promotion fund. *See* 2d Supp'l Br. at 6. Plaintiffs have corrected that error, but continue to overstate Defendant's debts.

Plaintiffs now seek $2,553.95 in unpaid contributions, and additional amounts for liquidated damages and interest. The principal amount is in error because Plaintiffs used improper contribution rates for hours worked in certain months. In fact, Defendant now owes *no* additional principal, as explained below, although he still owed liquidated damages and interest.

Martinez's Second Supplemental Declaration attaches three Local 66 rate schedules. The rate schedules are titled "Plasterers Local 66 Hourly Wage and Benefit Break Down 2010/11," the same for "2011/2012," and the same for "2012/2013." Martinez 2d Supp'l Decl. Exs. A–C. The 2009 Plasterers Master Agreement provides that the parties would negotiate "increases to wages and fringe benefits to be paid for [commercial and residential] work effective July 1, 2010, July 1, 2011, and July 1, 2012, respectively." Martinez Supp'l Decl. Ex. A art. XIII §§ 1(b), 2(c). Finding no evidence to the contrary in the record, the undersigned therefore concludes that the adjustments to fringe benefits reflected in the rate schedules became effective on July 1 of each year. Plaintiffs' calculations, however, apply the "2011/2012" rates to work performed in July and August of 2012, at which time the "2012/2013" rates would have been in effect. *See* Martinez 2d Supp'l Decl. ¶ 10. Plaintiffs also apply the "2012/2013" rates to work performed in July through

October of 2013, at which time the 2013 Plasterers Master Agreement—effective July 1, 2013—would have superseded the parties' previous negotiations.  *See id.*

In each case, the older rates that Plaintiffs erroneously applied were higher than the subsequent rates that were in effect.  The following table compares the amount of principal (i.e., fringe benefit contributions) owed for each month at issue based on Plaintiffs' calculations and based on the correct rates:

| Month | Plaintiff's Calculation | Corrected Calculation | Difference |
|---|---|---|---|
| July 2012 | $19,747.10 | $19,577.21[*] | $169.89 |
| August 2012 | $2,785.48 | $2,761.54[*] | $23.94 |
| July 2013 | $12,648.82 | $12,512.21[**] | $136.90 |
| August 2013 | $45,287.03 | $44,313.66[**] | $973.37 |
| September 2013 | $42,348.33 | $41,632.62[**] | $715.71 |
| October 2013 | $41,655.74 | $40,758.35[**] | $897.39 |
| *Total for affected months:* | *$164,472.50* | *$161,555.30* | *$2,917.20* |

Martinez's second supplemental declaration indicates that of the $164,472.50 that, according to Plaintiffs' calculations, Defendant owed in principal for these six months, Defendant paid $57,935.85 on October 11, 2013.  *See* Martinez 2d Supp'l Decl. ¶¶ 24−25 (stating that Defendant paid $12,648.82 for July of 2013 and $45,287.03 for August of 2013 on that date).  Defendant then paid $103,982.70 on April 21, 2014, leaving a purported shortfall of $2,553.95.  *Id.* ¶ 13.[7]

Using the correct rates, however, Defendant's payment on October 11, 2013 exceeded the principal owed for July and August of 2013 by $1,110.27, because Defendant owed only

---

[*] The undersigned calculated these values by applying the rates listed in the "2012/2013" rate schedule, Martinez 2d Supp'l Decl. Ex. C, to the hours reported in Defendant's monthly transmittals, Martinez Supp'l Decl. Ex. C.

[**] The undersigned calculated these values by applying the rates and formulas specified in the 2013 Plasterers Master Agreement, Martinez Decl. Ex. A arts. XV, XVII−XXI, to the hours reported in Defendant's monthly transmittals, Martinez Supp'l Decl. Ex. C.

[7] $164,472.50 − ($57,935.85 + $103,982.70) = $2,553.95.  According to Plaintiffs, Defendant had by this time paid the principal (i.e., the fringe benefit contributions due) for each other month where he failed to pay on time.  *See* Martinez 2d Supp'l Decl. ¶¶ 20−23.

11

$56,925.87 in benefits for those months ($12,512.21 for July and $44,313.66 for August). Nonetheless, as of April 21, 2014, Defendant still owed principal in the amount of $19,577.21 for July of 2012, $2,761.54 for August of 2012, $41,632.62 for September of 2013, and $40,758.35 for October of 2013, but had paid $1,110.27 on October 11, 2013 that should have been credited to these debts. Defendant's remaining principal owed to Plaintiffs was thus $103,619.45. Defendant's payment of $103,982.70 on April 21, 2014, *see id.* ¶ 13, therefore covered the outstanding principal in full, as well as $363.25 of Defendant's remaining debt for liquidated damages and interest. Instead of owing $2,533.95 in principal, Defendant owes nothing for that category of debts.

The correction to the principal Defendant owed to Plaintiffs also affects the measure of liquidated damages and interest. Liquidated damages must be reduced by $583.44—twenty percent of the amount by which Plaintiffs overstated the untimely-paid principal—to $33,993.40.

Interest must be reduced on account of: (1) the reduced principal after applying the correct rates; (2) the reduced principal for the period from October 11, 2013 to April 21, 2014 based on Defendant's payment exceeding the amount due for July and August of 2012; and (3) the reduced period in which interest accrued, given that Defendant paid off the principal in full on April 21, 2014. Interest should therefore be assessed as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

| Month | Principal | Date Due | Date Paid | Days | Interest[8] |
|-------|-----------|----------|-----------|------|-------------|
| Apr. 2011 | $   4,850.65 | May 15, 2011 | July 5, 2011 | 51 | $        67.78 |
| Nov. 2011 | $      967.40 | Dec. 15, 2011 | Jan. 11, 2012 | 27 | $          7.16 |
| July 2012 | $ 19,577.21 | Aug. 15, 2012 | Oct. 11, 2013 | 422 | $     2,263.45 |
|  | $ 18,466.94[9] |  | Apr. 21, 2014 | 192 | $        971.41 |
| Aug. 2012 | $   2,761.54 | Sept. 15, 2012 | Apr. 21, 2014 | 583 | $        441.09 |
| Jan. 2013 | $   1,561.12 | Feb. 15, 2013 | Sept. 5, 2013 | 202 | $          86.40 |
| Feb. 2013 | $      545.82 | Mar. 15, 2013 | Sept. 5, 2013 | 174 | $          26.02 |
| July 2013 | $ 12,511.92 | Aug. 15, 2013 | Oct. 11, 2013 | 57 | $        195.39 |
| Aug. 2013 | $ 44,313.66 | Sept. 15, 2013 | Oct. 11, 2013 | 26 | $        315.66 |
| Sept. 2013 | $ 41,632.62 | Oct. 15, 2013 | Apr. 21, 2014 | 188 | $     2,144.37 |
| Oct. 2013 | $ 40,758.35 | Nov. 15, 2013 | Apr. 21, 2014 | 157 | $     1,753.17 |
|  |  |  |  | *Total:* | $     8,271.90 |

Defendant therefore owes no remaining principal, $33,993.40 in liquidated damages, and $8,271.90 in interest.  Taking into account Defendant's $363.25 payment in excess of the principal, Plaintiffs' total damages are $41,902.05.  This total is $3,881.10 less than Plaintiffs' calculation of damages (which consisted of $2,552.95 in unpaid principal, $34,576.84 in liquidated damages, and $8,652.36 in interest).

### 4.   Plaintiffs May Recover Their Requested Attorneys' Fees in Part

Attorneys' fees incurred in actions brought to recover unpaid contributions are available under 29 U.S.C. § 1132(g)(2)(D).  Federal courts have adopted the "lodestar" method for calculating the amount of reasonable attorneys' fees.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate.  *Id.*  To determine whether Plaintiffs' claimed hours are reasonable, the Court must review attorneys' time records to determine whether the hours are adequately

---

[8] 10% simple interest = (Principal) x (0.10 / 365) x (Days Overdue).
[9] This value represents the remaining principal for July of 2012 after crediting $1,110.27 for Defendant's October 11, 2013 payment.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    documented in a manner that can be properly billed directly to clients. *Id.* at 434. The Court must

2    assess whether the hours claimed are vague, block-billed, excessive and/or duplicative, or whether

3    the hours in their entirety must be reduced because of limited success in the action. *See Navarro*

4    *v. General Nutrition Corp.*, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005). Decisions by

5    other courts regarding the reasonableness of the rate sought may provide evidence to support a

6    finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that

7    rate set by district court based, in part, on the rate awarded to same attorney in another case, was

8    reasonable).

9          Plaintiffs have provided a declaration of Lois Chang, one of Plaintiffs' attorneys,

10    explaining Plaintiffs' request for attorneys' fees and costs. Plaintiffs seek reimbursement at rates

11    of $195 per hour for Chang, a third-year associate with ERISA experience, and $225 per hour for

12    Eileen Bissen, a former shareholder at Plaintiffs' law firm. Chang Decl. ¶ 2. Taking into account

13    rates for fees awarded in other ERISA recovery cases, these rates are reasonable. *See, e.g.*,

14    *Carpenters Pension Trust Fund for N. Cal. v. Lindquist*, No. 10-3386 SC, 2011 WL 4543079, at

15    *2 (N.D. Cal. Sept. 29, 2011) (finding "an hourly rate of between $225 and $275 for attorney

16    time" to be reasonable); *Bd. of Trs. of Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d

17    1222, 1227−28 (N.D. Cal. 2005) (finding hourly rates of $210 and $345 to be reasonable).

18          Chang's declaration attaches a billing report detailing the hours Plaintiffs' attorneys spent

19    seeking to recover Defendant's debts to Plaintiffs. *See* Chang Decl. Ex. A. Most of these entries

20    are plainly related to this action and for reasonable amounts of time, and are therefore recoverable

21    under § 1132(g)(2)(D). *See, e.g.*, *id.* at Ref. No. 31 (billing two hours to "[p]repare ERISA

22    complaint; civil cover sheet; summons"). Some entries, however, appear to relate to efforts to

23    collect Defendant's debt to Plaintiffs outside the context of this litigation. *E.g.*, *id.* at Ref. No. 34

24    ("Research RE: Stop Notice timelines and enforcement; Research RE: project; E-Mails with Marin

25    Recorder's Office RE: Notice of completion; draft Stop Notice enforcement action"). Others

26    involve correspondence with individuals whose relation to the case is not clear. *E.g.*, *id.* at Ref.

27    No. 38 ("Receive and review correspondence from P. Norgaard."). The undersigned raised these

28    issues at the September 19 hearing and requested that Plaintiffs address in their supplemental brief

United States District Court
Northern District of California

1    the justification for the billing entries numbered 34, 38, 39, 40, 42, 43, 56, and 60, specifically

2    with respect to: (1) any authority permitting Plaintiffs to recover attorneys' fees for collection

3    efforts outside of this litigation; and (2) the role of each individual whose correspondence is listed

4    as a basis for accruing fees.

5            Plaintiffs' Supplemental Brief explained that Plaintiffs seek to recover for time spent

6    "collecting unpaid fringe benefits via Stop Payment Notices and Joint Checks," on the basis that

7    "[s]uch efforts relate to litigating the present actions since [they] could reduce the amount of

8    unpaid contributions owed by Defendant." Supp'l Br. (dkt. 16) at 8. Plaintiffs further explained

9    that "P. Norgaard and S. Sharma [were] both involved in issuing joint checks for collection of

10   unpaid benefit contributions." *Id.* at 8 n.3. The Supplemental Brief does not explain the roles of

11   "H. Jimenez," "C. Murphy," or "C. Ragni," all of whom are discussed in the billing report. *See,*

12   *e.g.*, Chang Decl. Ex. A at Ref. No. 43. In order to expedite judgment, Plaintiffs waived recovery

13   of any fee requests that the Court might determine were not adequately addressed by Plaintiffs'

14   Supplemental Brief and declarations. *See* Supp'l Br. at 9 n.4.

15           The undersigned is not persuaded that ERISA's attorneys' fees provision encompasses

16   efforts outside of this action to recover unpaid contributions, even where such efforts could reduce

17   the liability at issue in this action. The statute authorizes only "reasonable attorney's fees and

18   costs *of the action*." 29 U.S.C. § 1132(g)(2)(D) (emphasis added). The provision is therefore

19   limited to fees incurred in bringing the ERISA action, and does not encompass other collection

20   efforts. *See, e.g.*, *Emp. Painters' Trust v. Cascade Coatings*, (W.D. Wash. Feb. 10, 2014)

21   ("Specifically, Plaintiffs are not entitled to attorney's fees under § 1132(g)(2)(D) for their state

22   law bond claims against insurance company defendants or for their common law unjust

23   enrichment claim against the Port of Seattle."). As the undersigned noted at the hearing, the

24   Plasterers Master Agreement authorizes recovery of attorneys' fees for other collection efforts, *see*

25   Martinez Decl. Ex. A art. XXV § 5, but the Labor Agreement does not appear to include an

26   equivalent provision. Plaintiffs have provided no basis to determine which CBA or CBAs the

27   non-ERISA collection efforts pertained to, or how correspondence with the individuals discussed

28   above relates, if at all, to this action. In light of Plaintiffs' decision to waive fees for which

1   unresolved questions remained, the undersigned therefore recommends that fees for the eight

2   billing entries discussed at the hearing be denied.

3         The undersigned recommends that Plaintiffs be awarded fees for their remaining eleven

4   billing entries,[10] totaling 2.3 hours at $195 per hour and 3.8 hours at $225 per hour.  *See* Chang

5   Decl. Ex. A.  The undersigned also recommends that Plaintiffs recover for the 5.5 hours that

6   Chang spent researching, drafting, and arguing the present Motion at the rate of $195 per hour.

7   Plaintiffs have not requested fees for time spent preparing supplemental filings to correct

8   deficiencies.  In total, the undersigned recommends that Plaintiffs be awarded $2,376 in attorneys'

9   fees.

### 5.  Plaintiffs' Costs Are Reasonable

11        Plaintiffs seek $466.95 in costs.  The Chang Declaration attaches confirmation of payment

12  of a $400 filing fee for Plaintiffs' Complaint, and an invoice for $66.95 for service of process.

13  Chang Decl. Ex. B.

14        ERISA authorizes an award of reasonable costs in an action to recover unpaid

15  contributions.  29 U.S.C. § 1132(g)(2)(D).  Civil Local Rule 54-3(a)(1) provides that an award of

16  the clerk's filing fee is "allowable if paid by the claimant."  The docket and the evidence that

17  Plaintiffs have submitted reflect that the filing fee was paid, and therefore Plaintiffs' request for

18  the $400 filing fee should be granted.  Plaintiffs' costs for service of process are also reasonable,

19  and courts have routinely awarded costs of service in actions brought under § 1132(g).  *See, e.g.*,

20  *Central. Cal. IBEW/NECA Pension Trust v. Ozzimo Electric, Inc.*, No. C 13-03800 JSW, 2014

21  WL 1245059, at *5 (N.D. Cal. Mar. 25, 2014).  Plaintiffs may therefore recover the full $466.95

22  that they request for costs.

## IV.    CONCLUSION

24        For the reasons discussed above, Plaintiffs have demonstrated that they are entitled to

25  $41,902.05 in damages, $2,376.00 in attorneys' fees, and $466.95 in costs.  The undersigned

26  recommends that Plaintiffs' Motion be GRANTED except as to the deficiencies in damages and

---

[10] Chang Decl. Ex. A at Ref. Nos. 32, 33, 41, 45−47, 51−53, 57, 59.

United States District Court
Northern District of California

fees previously identified, and that judgment be entered in favor of Plaintiffs in the amount of $44,745.  Any objections to this recommendation must be filed no later than November 21, 2014.

Dated: November 7, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge

United States District Court
Northern District of California

17